999 A.2d 481 (2010)
414 N.J. Super. 440
In the Matter of the SUSPENSION OF the TEACHING CERTIFICATE OF Melissa VAN PELT, Gray Charter School, Newark, Essex County.
DOCKET NO. A-5889-08T2.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 2010.
Decided July 27, 2010.
*482 William J. Koy, Morristown, argued the cause for appellant Melissa Van Pelt (Law Firm of William Koy, L.L.P., attorneys; Mr. Koy and William F. Koy, on the brief).
Cherie L. Adams argued the cause for respondent Gray Charter School (Adams Stern Gutierrez & Lattiboudere, LLC, attorneys; Ms. Adams and Erin E. McLaughlin, on the brief).
Cynthia Raymond Rimol, Deputy Attorney General, argued the cause for respondent Commissioner of Education (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Rimol and Joyce Atkins, Deputy Attorney General, on the brief).
*483 Before Judges SKILLMAN, GILROY and SIMONELLI.
The opinion of the court was delivered by
GILROY, J.A.D.
Appellant Melissa Van Pelt appeals from the May 29, 2009 final decision of the Commissioner of Education that suspended her State teaching certificate for one year after appellant resigned from her teaching position at the Gray Charter School (the school) in Newark. The appeal requires us to address the correctness of the Commissioner's determination that N.J.S.A. 18A:26-10 and N.J.S.A. 18A:28-8 equally apply to teaching staff members of charter schools as they do to teaching staff members of public schools. We conclude that the Commissioner correctly decided the applicability of the two statutes and affirm.
The school employed appellant as a non-tenured eighth-grade teacher during the 2006-2007 school year. On May 4, 2007, appellant signed an employment contract (the contract) agreeing to teach eighth grade at the school during the 2007-2008 school year. The contract contained the following provision: "Termination Upon Agreement[.] Upon the written agreement of both employee and the School (which agreement may be made by the Executive Director), this agreement shall immediately terminate." Verna Gray, the school's executive director, executed the contract on behalf of the school.
On August 13, 2007, two days prior to staff training at the school and eight days prior to the opening of the school for the 2007-2008 school year, appellant submitted a letter to Gray resigning from her teaching position explaining, "[d]ue to circumstances, I have decided to pursue other career opportunities." To the contrary, appellant resigned to accept a teaching position in the Woodbridge Township school district.
In September 2007, the school filed a written request with the Department of Education seeking an order to show cause (OTSC) compelling appellant to explain why the Commissioner should not suspend appellant's teaching certificate "for unprofessional conduct pursuant to N.J.S.A. 18A:26-10 and N.J.S.A. 18A:28-8." The request was supported by Gray's affidavit of September 20, 2007, in which she stated in relevant part: "[B]ecause of the number of resignations without the required notice, Gray Charter School was not able to open as scheduled on August 21, 2007. In addition, staff training scheduled for August 15, [2007,] had to be rescheduled at additional expense to the school." Lastly, Gray stated that appellant's resignation caused disruption in the students' academic programs.
The school filed applications for, and the Commissioner issued, OTSCs against seven other teachers who had resigned from their teaching positions at the school immediately prior to commencement of the 2007-2008 school year, directing them to show cause why their teaching certificates should not be suspended pursuant to the same two statutes as appellant. Six of the other teachers contested the OTSCs.
After appellant and the six other teachers filed answers, the OTSCs were transferred to the Office of Administrative Law (OAL) as contested cases. Appellant and the six other teachers argued that N.J.S.A. 18A:26-10 and N.J.S.A. 18A:28-8 did not apply to charter school teachers. Additionally, appellant and several of the other teachers argued that N.J.S.A. 18A:28-8 did not apply to non-tenured teachers. Because of the similarity of the defenses, the Administrative Law Judge (ALJ) consolidated the cases for the limited purposes *484 of deciding whether the two statutes applied to charter school teachers and whether N.J.S.A. 18A:28-8 applied to non-tenured teachers.
On June 6, 2008, the ALJ entered an order determining that the two statutes apply to charter schools, but that N.J.S.A. 18A:28-8 only applies to tenured teachers. Accordingly, the ALJ dismissed those parts of the OTSCs based on alleged violations of N.J.S.A. 18A:28-8 as to five non-tenured teachers, including appellant. On July 9, 2008, on interlocutory review granted, N.J.A.C. 1:1-14.10, the Commissioner adopted the ALJ's determinations. On August 14, 2008, the ALJ entered an order deconsolidating the seven cases for separate hearings on the merits.
On January 27, 2009, the school filed a motion for summary decision, arguing that the untimeliness of appellant's resignation from her teaching position at the school violated N.J.S.A. 18A:26-10. On April 14, 2009, the ALJ issued his initial decision concluding "that [appellant] ceased to perform her duties before the expiration of the term of her employment," contrary to the statute. Finding that the "timing of [appellant's] resignation was particularly problematic in that it occurred one week before the beginning of the school year[, and that appellant] offered no mitigating circumstances with respect to the length of the suspension," the ALJ determined that appellant's teaching certificate should be suspended for one year. On May 29, 2009, the Commissioner issued a final decision adopting the ALJ's initial decision.
On appeal, appellant argues the Commissioner erred in determining that she wrongfully resigned from her teaching position, contending her contract did not contain a 60-day notice of termination provision preventing her from resigning when she did. Appellant also argues that the Commissioner erred in determining that the circumstances warranted the maximum sanction of a one-year suspension of her teaching certificate. Underpinning the Commissioner's final decision is her July 9, 2008 decision adopting the ALJ's June 6, 2008 decision that N.J.S.A. 18A:26-10 and N.J.S.A. 18A:28-8 apply to charter schools, but that the latter statute does not apply to non-tenured teachers.[1] Accordingly, we first address the correctness of the Commissioner's August 2008 decision determining the applicability of the two statutes to charter schools.[2]

I.
During the hearing before the ALJ concerning the applicability of the two statutes under which the school requested the Commissioner to suspend the teachers' teaching certificates, appellant and the other teachers argued that the two statutes only applied to public schools operated by boards of education and to approved private schools for the disabled, not to charter schools. The teachers contended the charter schools are governed by their own statutes and regulations, N.J.S.A. 18A:36A-1 to -18 and N.J.A.C. 6A:11-1.1 to -6.3, and the two statutes sought to be *485 enforced against them were not incorporated therein. The ALJ rejected the teachers' argument and the Commissioner adopted the ALJ's decision. Because the question presented turns on our review of an administrative agency's interpretation of a statute, we review the general principles governing that task.
"Generally, courts afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 420, 982 A.2d 445 (2009) (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196, 927 A.2d 543 (2007)). However, being a strictly legal issue, an appellate court is not bound by an agency's construction of a statute, and an agency's determination will be reversed where "it is `plainly unreasonable.'" Ibid. (quoting T.H. v. Div. of Developmental Disabilities, 189 N.J. 478, 490, 916 A.2d 1025 (2007)). "An agency's . . . decision is plainly unreasonable and violates express or implied legislative direction if it gives `a statute any greater effect than is permitted by the statutory language[,] . . . alter[s] the terms of a legislative enactment[,] . . . frustrate[s] the policy embodied in the statute. . . [or] is plainly at odds with the statute.'" Ibid. (quoting T.H., supra, 189 N.J. at 491, 916 A.2d 1025).
In construing a statute, the role of the court is to determine the intent of the Legislature and, "generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). In deciphering the Legislature's intent, "[w]e apply to the statutory terms the generally accepted meaning of the words used by the Legislature." Patel, supra, 200 N.J. at 418, 982 A.2d 445. It is not the function of a court to "presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002).
"A clear and unambiguous statute is not open to construction or interpretation." Watt v. Mayor & Council of Franklin, 21 N.J. 274, 277, 121 A.2d 499 (1956). Indeed, the court must "`construe and apply the statute as enacted.'" DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039 (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548, 416 A.2d 896 (1980)). "If the plain language leads to a clear and unambiguous result, then our interpretive process is over." Richardson, supra, 192 N.J. at 195, 927 A.2d 543. Only if the statutory language is ambiguous and open to more than one interpretation should the court look to extrinsic evidence. DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039.
N.J.S.A. 18A:26-10 governs the suspension of a teacher's certificate for wrongfully ceasing to perform his or her duties:
Any teaching staff member employed by a board of education or an approved private school for the disabled, who shall, without the consent of the board or, in the case of an approved private school for the disabled, the board of directors of the school, cease to perform his duties before the expiration of the term of his employment, shall be deemed guilty of unprofessional conduct, and the commissioner may, upon receiving notice thereof, suspend his certificate for a period not exceeding one year.
As used in this section, "approved private school for the disabled" means a private entity approved by the Department of Education to provide special education and related services to students with disabilities who have been placed by the district board of education or charter school responsible for providing their education.
*486 N.J.S.A. 18A:28-8 requires a tenured teacher to give sixty days written notice of his or her intention to resign from a teaching position:
Any teaching staff member, under tenure of service, desiring to relinquish his position shall give the employing board of education at least 60 days written notice of his intention, unless the board shall approve of a release on shorter notice and if he fails to give such notice he shall be deemed guilty of unprofessional conduct and the commissioner may suspend his certificate for not more than one year.
In determining that these statutes apply to teaching staff members of charter schools, the Commissioner reasoned that the Charter School Program Act of 1995 (CSPA), N.J.S.A. 18A:36A-1 to -18, explicitly provides that charter schools are public schools and are required to "operate in accordance with its charter and the provisions of law and regulation which govern other public schools." N.J.S.A. 18A:36A-11(a). The Commissioner rejected the teachers' argument that the provision directing charter schools to operate in accordance with the law governing public schools applies only to charter schools and not to charter school employees, because
this argument ignores that N.J.S.A. 18A:26-10 and N.J.S.A. 18A:28-8 impose obligations on any person holding employment as a teaching staff member, since they flow . . . from certification and tenure status, respectively, and together seek to ensure that the education of public school students will not be compromised by the abrupt departure of any teaching staff member. . . . Since charter school employees are nowhere exempted from compliance with these statutes, there is no basis for concluding that the laws do not apply to them. Indeed, given the purpose of [the statutes], the very notion of charter school employees having no obligation in this regard flies in the face of the Legislature's intended scope of protection as well as sound educational policy and common sense.
Addressing the 2005 amendment to N.J.S.A. 18A:26-10 that extended its provisions to teachers at private schools for the disabled, the Commissioner determined that the purpose of the amendment, L. 2005 c. 74, § 1, as expressed in its accompanied Sponsor's and Senate Education Committee's statements, "was to ensure that public school students educated through contracts with private schools would be afforded the same protection against disruption to their education as other public school pupils." Because charter school students are public school students, the Commissioner reasoned that "there was no need for the Legislature to specify inclusion of charter school[s'] employees when revising the statute; indeed, construing inclusion of employees of private schools for the disabled as an implied exclusion of charter school employees actually undermines the Legislature's explicitly expressed intent." We agree.
We acknowledge that the two statutes do not refer to charter school teachers. Nonetheless, in light of the CSPA and the purposes of the statutes, we conclude that the Commissioner's interpretation of the statutes as being applicable to charter school teachers is in accord with the Legislature's intent.
N.J.S.A. 18A:36A-3(a) defines a charter school as "a public school operated under a charter granted by the commissioner, which is operated independently of a local board of education and is managed by a board of trustees." N.J.S.A. 18A:36A-11(a) provides:

A charter school shall operate in accordance with its charter and the provisions *487 of law and regulation which govern other public schools; except that, upon the request of the board of trustees of a charter school, the commissioner may exempt the school from State regulations concerning public schools, except those pertaining to assessment, testing, civil rights and student health and safety, if the board of trustees satisfactorily demonstrates to the commissioner that the exemption will advance the educational goals and objectives of the school.
[(Emphasis added).]
Charter school teaching staff members are required to "hold appropriate New Jersey certification," N.J.S.A. 18A:36A-14(c), and charter school employees "shall not accrue tenure pursuant to N.J.S.A. 18A:17-2, N.J.S.A. 18A:17-3, or N.J.S.A. 18A:28-5, but shall acquire streamline tenure pursuant to guidelines promulgated by the commissioner." N.J.S.A. 18A:36A-14(e). The regulation governing charter school employee tenure provides that teaching staff members "shall acquire streamline tenure in a charter school after three consecutive academic years, together with employment at the beginning of the next succeeding academic year, in accordance with the tenure acquisition criteria as set forth in N.J.S.A. 18A:28-5(b), 18A:28-6 and 18A:17-2(b)2." N.J.A.C. 6A:11-6.1.
Read together, N.J.S.A. 18A:36A-3(a) and N.J.S.A. 18A:36A-11(a) demonstrate the Legislature's intention that charter schools operate under the same statutes and regulations as public schools unless the CSPA otherwise provides or the Commissioner provides an exemption. N.J.S.A. 18A:36A-14 provides that charter school operations includes the employment of teaching staff, who must be certified and gain tenure according to N.J.A.C. 6A:11-6.1. Given the absence of administrative regulations or provisions in the CSPA concerning the disciplining of charter school teaching staff members for unprofessional conduct by improperly resigning from their teaching positions, N.J.S.A. 18A:26-10 and N.J.S.A. 18A:28-8 are applicable to those teaching staff members through the broad terms of N.J.S.A. 18A:36A-11(a), which requires charter schools to operate in accordance with statutes governing other public schools.
The Legislature's 2005 amendment to N.J.S.A. 18A:26-10, L. 2005 c. 74, § 1, supports this conclusion. In adding teachers employed at approved private schools for the disabled to those who may be guilty of unprofessional conduct for ceasing to perform their duties, the Senate's Education Committee's statement attached to the then proposed amendment states that the purpose of the statute is to protect pupils from the disruption caused by "[s]taff members who leave before the expiration of their contracts." Senate Education Committee Statement, S. Bill 1419, (May 13, 2004). According to that statement, the reason for extending N.J.S.A. 18A:26-10 to teachers at private schools for the disabled was that "[t]he Department of Education requires approved private schools for the disabled to provide contracts for certified employees. It is therefore only appropriate to grant pupils at these schools the breach protection currently afforded public schools under N.J.S.A. 18A:26-10." Ibid.
We determine that the absence of any reference to charter schools in the committee's statement and the inclusion of the reference to the "protection currently afforded public schools" under N.J.S.A. 18A:26-10 indicates the Legislature implicitly acknowledged that the statute already applied to employees of charter schools, which entities are defined as public schools subject to the Commissioner's oversight. Indeed, the amended statute's definition of "approved private school for the disabled" indicates as much. It defines such a *488 school as a private entity approved by the Department to provide special education to those with disabilities "who have been placed by the district board of education or charter school responsible for providing their education." N.J.S.A. 18A:26-10. The inclusion of charter schools in that definition demonstrates not that charter school employees are exempt from the statute, but that the Legislature understood that charter schools are public schools tasked with placing students with disabilities in those private entities.
In light of the foregoing statutory context and purposes of the statutes in question, we conclude that the Commissioner's interpretation that the statutes apply to charter school teachers is not "plainly unreasonable." Patel, supra, 200 N.J. at 420, 982 A.2d 445.

II.
We now address appellant's arguments that the Commissioner's determination she wrongfully resigned her teaching position is not supported by credible evidence in the record, and alternatively, that the circumstances surrounding her resignation do not warrant a one-year suspension of her teaching certificate.
"In administrative law, the overarching informative principle guiding appellate review requires that courts defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422, 945 A.2d 692 (2008). Accordingly, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid; see also Circus Liquors, Inc. v. Middletown Twp., 199 N.J. 1, 9-10, 970 A.2d 347 (2009). Thus, "[w]e will reverse an agency decision if it is arbitrary, capricious, or unreasonable or if it is not supported by credible evidence in the record." In re N.J. Pinelands Comm'n Resolution PC4-00-89, 356 N.J.Super. 363, 372, 812 A.2d 1113 (App.Div.), certif. denied, 176 N.J. 281, 822 A.2d 610 (2003).
On May 29, 2009, the Commissioner issued her final decision adopting the ALJ's initial decision. In so doing, the Commissioner reasoned:
The Commissioner also rejects the argument presented in respondent's exceptionsi.e., that the absence of a 60-day notice-of-termination clause in respondent's employment contract affects the nature of the sanction respondent should receive for leaving petitioner in the lurch. It is well-grounded in education law that determination of the sufficiency of a term of notice pursuant to this statute is dictated by the terms of the parties' employment contract and any resignation or termination must be in accordance with the terms of such agreement. . . . Here, petitioner's contract contained a provision which stipulated that respondent could not terminate her employment without petitioner's consentwhich was not given in this case. Thus, respondent was in violation of the contract and subject to sanction.
Second, the circumstances warrant a maximum sanction. Respondent faxed her resignation letter to the school administrator only two days before staff training was to commence for the 2007-2008 school year and one week before school was to begin. The result was disruption significant enough to warrant the suspension of respondent's teaching certificate for a full year. . . .
Nor does the record reveal mitigating circumstances that would justify a lesser *489 sanction. Respondent's resignation does not appear to have been driven by illness or other such exigent circumstances. Her resignation letter explained that she had "decided to pursue other career opportunities," and it is undisputed that she accepted employment and served in the Woodbridge public school district for the 2007-2008 school year. . . .
[(internal citations and quotations omitted).]
We have considered appellant's arguments in light of the record and applicable law. We conclude that the Commissioner's factual determinations are well supported in the record. We affirm substantially for the reasons expressed by the Commissioner in her final decision of May 29, 2009. R. 2:11-3(e)(1)(D).
Affirmed.
NOTES
[1] Two of the other six cases affected by the Commissioner's August 14, 2008 decision were also submitted to the court on April 27, 2010, without oral argument. In the Matter of the Suspension of the Teaching Certificate of Tyarra Hunter, No. A-5938-08, and In the Matter of the Suspension of the Teaching Certificate of Jenelle Stokes, No. A-6425-08. We are affirming in those two appeals in unreported opinions simultaneously filed with this opinion.
[2] Because the school did not cross-appeal from that part of the Commissioner's July 9, 2008 decision, determining that N.J.S.A. 18A:28-8 does not apply to non-tenured teachers, we do not address that part of the Commissioner's decision.